## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KEVIN COIT** | : | **CIVIL ACTION** |
| *Plaintiff pro se* | : | |
| | : | |
| **v.** | : | **NO. 23-CV-5118** |
| | : | |
| **R. MARSH**, *et al.*, | : | |
| *Defendants* | : | |

# M E M O R A N D U M

NITZA I. QUIÑONES ALEJANDRO, J.                                APRIL 12, 2024

      Plaintiff Kevin Coit, a convicted prisoner currently incarcerated at SCI Houtzdale, filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983, asserting violations of his constitutional rights.  Currently before the Court are Coit's Complaint ("Compl." (ECF No. 2)), his Motion for Leave to Proceed *In Forma Pauperis* (ECF No. 1),[1] and his Prisoner Trust Fund Account Statement (ECF No. 7.)  In the Complaint, Coit asserts claims against the following individuals: R. Marsh; Tammy Furguson; J. Malishaik; B. Schnider; J. Sorber; V. Fanrak; M. Sipple; Hensley; and Glushakohl.  (Compl. at 2-4.)  Coit asserts individual and official capacity claims against each of the Defendants.  (*Id*.)  For the reasons set forth, the Court will grant Coit leave to proceed *in forma pauperis*, dismiss his official capacity claims with prejudice, and dismiss the remainder of his Complaint without prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  Coit has leave to file an amended complaint.

---

[1]    Coit filed a second Motion for Leave to Proceed *In Forma Pauperis*.  (ECF No. 6.)  The second motion will be denied as moot.

I.    **FACTUAL ALLEGATIONS**[2]

Coit's claims are based on his alleged improper placement in the Behavioral Management Unit ("BMU") for a 14-month period in 2022 and 2023, the conditions of confinement in the BMU, and events that allegedly occurred while he was housed there.  Coit alleges that on March 18, 2022, he met with PRC[3] Defendants Fanrak, Sipple, Hensley, and Glushakohl, who told Coit that he was being recommended for a BMU placement because of problematic behavior.  (Compl. at 7.)  Coit alleges that he informed these Defendants that he intended to appeal the decision, and that he did so the next day.  (*Id*.)  He alleges he never received a response to his appeal.  (*Id*.)  Not having received a response to his appeal, in April 2022, Coit allegedly appealed the placement decision to Defendant Sorber.  (*Id*.)  Sorber denied that appeal as premature, allegedly telling Coit he needed to wait for the placement decision to be made before he appealed the placement.  (*Id*.)

Coit alleges that in April 2022, he met with Defendants Furguson, Marsh, Malishaik, and Schnider for BMU placement.  (*Id*.)  Coit alleges he verbally appealed the placement on the ground that he did not meet the criteria.  (*Id*.)  He alleges that the Defendants disagreed and confirmed their intention to place him in the BMU.  (*Id*.)  Coit alleges that between his initial meeting with the PRC Defendants on March 18, 2022 and May 16, 2022, he submitted multiple appeals of the BMU placement and never received a response from the PRC Defendants.  (*Id*.)

Coit alleges that in August 2022, unidentified individuals at SCI Frackville submitted a request that Coit be removed from the BMU because he did not meet the criteria for that placement.  (*Id*. at 9.)  He alleges that Defendants Furguson, Marsh, Schnider, and Malishaik denied the request on the ground that Coit did satisfy the required criteria.  (*Id*.)  Coit alleges that in October 2022,

---

[2]    The allegations set forth in this Memorandum are taken from Coit's Complaint.  (ECF No. 2.)  The Court adopts the pagination supplied by the CM/ECF docketing system.

[3]    Coit does not explain this acronym, but it appears to mean "Program Review Committee."

unidentified individuals at SCI Frackville again submitted a request that Coit be removed from the BMU.  (*Id*.)  Coit alleges that in December 2022, Defendants Furguson, Marsh, Malishaik, and Schnider had Coit transferred to SCI Rockview.  (*Id*.)  On May 24, 2023, Defendant Malishaik allegedly told unidentified individuals at SCI Rockview that Coit was not fit for BMU placement.  (*Id*.)  On October 10, 2023, Coit was allegedly removed from BMU and placed into DTU.[4]  (*Id*.)

Coit alleges that because of his improper placement in the BMU, he was the victim of multiple assaults, was subjected to excessive force, and was subjected to conditions of confinement that prompted him to file civil lawsuits against Defendants Marsh and Malishaik, and non-defendants Wynder and Salamon.[5]  (*Id*.)  He also alleges that while confined in the BMU, he was denied visits, was retaliated against, and served time in disciplinary custody.  (*Id*. at 6.)  He alleges he has experienced weight loss, headaches, and back and neck pain.  (*Id*.)  Coit asserts claims based on the alleged denial of his due process rights and on the conditions of his confinement.  (*Id*. at 3.)  He seeks money damages.  (*Id*. at 6.)

## II.   STANDARD OF REVIEW

The Court will grant Coit leave to proceed *in forma pauperis* because it appears that he is incapable of paying the filing fees to commence this civil action.[6]  Accordingly, 28 U.S.C. §

---

[4]     Coit does not explain this acronym either, but it appears to refer to "Diversionary Treatment Unit."

[5]     *See Coit v. Marsh*, No. 22-1567, 2024 WL 1356682, at *1-*2 (M.D. Pa. Mar. 29, 2024) (granting in part Defendants' motion to dismiss Coit's complaint asserting violations of his constitutional rights while housed at SCI Frackville from July to September 2022); *Coit v. Malishaik*, No. 23-1124, 2024 WL 289335, at *1 (M.D. Pa. Jan. 25, 2024) (dismissing without prejudice Coit's amended complaint asserting violations of his constitutional rights while housed at SCI Rockview between February and August 2023); *Coit v. Salamon*, No. 23-2059, 2024 WL 183015, at *1 (M.D. Pa. Jan. 17, 2024)(dismissing without prejudice Coit's complaint asserting violations of his constitutional rights while housed at SCI Rockview between August and November 2023); *Coit v. Wynder*, No. 22-1277, 2023 WL 4278668, at *1 (M.D. Pa. June 29, 2023) (granting Defendants' motion to dismiss Coit's complaint asserting violations of his constitutional rights while housed at SCI Frackville between May and July 2022).

[6]     However, as Coit is a prisoner, he will be obligated to pay the full filing fee in installments in accordance with the Prison Litigation Reform Act.  *See* 28 U.S.C. § 1915(b).

1915(e)(2)(B)(ii) requires the court to dismiss the complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As Coit is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## IV.    DISCUSSION

In the Complaint, Coit asserts claims for violation of his Eighth and Fourteenth Amendment rights. The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at

1207)).  *See Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

### A.    Official Capacity Claims

Coit asserts official capacity claims seeking money damages against each of the named Defendants, all of whom are employees of the Pennsylvania Department of Corrections.  The Eleventh Amendment bars suits against a state and its agencies in federal court that seek monetary damages.  *See Pennhurst State Sch. And Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003).  Suits against state officials acting in their official capacities are really suits against the employing government agency, and as such, are also barred by the Eleventh Amendment.  *A.W.*, 341 F.3d at 238; *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989).  Additionally, the United States Court of Appeals for the Third Circuit has held that, where a claim is filed against state officials who were not directly involved in the activities that caused the alleged constitutional violation but are instead named as defendants because of their positions in state government, they are deemed to be sued in their official capacities and, thus, entitled to Eleventh Amendment immunity.  *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020).  As the Commonwealth has not waived its Eleventh Amendment immunity for lawsuits filed in federal court, *see* 42 Pa. Cons. Stat. § 8521-22, it and its departments, as well as their officials sued in their official capacities, are immune from suits filed in federal court.  Accordingly, Coit's official capacity claims seeking money damages will be dismissed with prejudice.

### B.    Claims Based on Placement in BMU

Coit also asserts that he was denied due process and the Court understands him to be asserting this claim based on his placement in the BMU and the Defendants' alleged denial on two

occasions of requests to transfer him out of the BMU.  The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  As a threshold matter, "[i]t is axiomatic that a cognizable liberty or property interest must exist in the first instance for a procedural due process claim to lie."  *Mudric v. Att'y Gen.*, 469 F.3d 94, 98 (3d Cir. 2006) (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972)); *see also Wolfe v. Pa. Dep't of Corr.*, 334 F. Supp. 2d 762, 773 (E.D. Pa. 2004).  In *Sandin v. Conner*, 515 U.S. 472 (1995), the United States Supreme Court shifted the focus of the liberty interest analysis from one "based on the language of a particular regulation" to "the nature of the deprivation" experienced by the prisoner.  *See id.* at 481.  The Court reasoned, *inter alia*, that "[d]iscipline by prison officials in response to a wide range of misconduct" is expected as part of an inmate's sentence.  *See id.* at 485.  Accordingly, in focusing on the nature of the punishment instead of on the words of any regulation, the Court held that the procedural protections in *Wolff v. McDonnell*, 418 U.S. 539 (1974),[7] were inapplicable because the "discipline in segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest."  *See Sandin*, 515 U.S. at 486.  For a prisoner, such a deprivation occurs when the prison "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *See id.* at 484. "When considering whether an inmate's placement in segregated housing triggers a legally cognizable interest courts should consider:   (1) the amount of time spent in segregation; and (2) whether the conditions of

---

[7]      *Wolff* had previously set forth five requirements of due process in a prison disciplinary proceeding: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the charges; (3) an opportunity to call witnesses and present documentary evidence, provided the presentation of such does not threaten institutional safety or correctional goals; (4) assistance from an inmate representative, if the charged inmate is illiterate or if complex issues are involved; (5) a written decision by the fact finders as to the evidence relied upon and the rationale behind their disciplinary action. *Id.* at 563-67.  In addition, the Supreme Court held that there must be "some evidence" which supports the conclusion of the disciplinary tribunal.  *Superintendent v. Hill*, 472 U.S. 445, 455 (1985).

segregation were significantly more restrictive than those imposed on other inmates in segregation." *Allah v. Bartkowski*, 574 F. App'x 135, 139 (3d Cir. 2014). *See also Hughes v. Davidson*, No. 23-0107, 2023 WL 2569451, at *5-*6 (W.D. La. Feb. 17, 2023), *report and recommendation adopted*, 2023 WL 2564341 (W.D. La. Mar. 17, 2023) (applying *Sandin* to *pro se* prisoner's due process claim based on placement in BMU).

In *Sandin*, the Supreme Court concluded that placement in disciplinary segregation for thirty days did not deprive the inmate of a protected liberty interest. *See Sandin*, 515 U.S. at 486; *see also Williams v. Bitner*, 307 F. App'x 609, 611 (3d Cir. 2009) (no liberty interest triggered by 90-day placement in disciplinary segregation); *Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir. 2002) (no liberty interest triggered by seven-month placement in disciplinary confinement). Moreover, "a thorough investigation is not a requirement of due process in the prison disciplinary setting." *See Parks v. O'Shaughnessy*, No. 14-1268, 2016 WL 4385869, at *4 (M.D. Pa. May 3, 2016); *see also Moles v. Holt*, 221 F. App'x 92, 96 (3d Cir. 2007) (concluding that "a failure to conduct a prompt and thorough investigation prior to a disciplinary hearing does not rise to the level of a due process violation"). Thus, absent a protected liberty interest, a prisoner cannot maintain claims regarding alleged procedural defects prior to and during his misconduct proceedings.

Although it is not entirely clear from the Complaint, it appears that Coit was confined in the BMU from no later than August 2022 through his transfer to DTU in October 2023, a period of approximately fourteen (14) months. (Compl. at 9.) Accordingly, he cannot assert a protected liberty interest under the Fourteenth Amendment. *See Griffin v. Vaughn*, 112 F.3d 703, 706-08 (3d Cir. 1997) (no liberty interest in avoiding fifteen (15) month placement in administrative custody because said confinement was not atypical). Additionally, the allegations in the Complaint suggest that Coit was afforded several opportunities to challenge his placement in the BMU, both

before the placement was implemented and while it was ongoing.  (Compl. at 7, 9.)  For these reasons, Coit's due process claims are not plausible and will be dismissed.  However, Coit will be granted leave to amend this claim if he so chooses.

### C.    Claims Based on Conditions While Housed in BMU

Coit asserts that while he was housed in the BMU, he was assaulted, denied visits, was retaliated against, and received disciplinary custody time.  (Compl. at 6.)  He also asserts that he was subjected to the use of excessive force.  (*Id*. at 9.)  He claims that the conditions of his confinement in the BMU violated his constitutional rights.  (*Id*. at 3.)

The Eighth Amendment governs claims brought by convicted inmates challenging their conditions of confinement.  *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005).  A prisoner must allege that his conditions of confinement amount to punishment.  *Bell v. Wolfish*, 441 U.S. 520, 538 (1979).  Unconstitutional punishment under the Eighth Amendment typically includes both objective and subjective components.  *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007).  The objective component requires an inquiry into whether "the deprivation [was] sufficiently serious" and the subjective component asks whether "the officials act[ed] with a sufficiently culpable state of mind[.]"  *Id*. (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Bell*, 441 U.S. at 538-39, 539 n.20).  In general, a prisoner must assert that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety.  *See Seiter*, 501 U.S. at 298-99; *see also Wilson v. Burks*, 423 F. App'x 169, 173 (3d Cir. 2011) (*per curiam*) ("'[T]he official must both be aware of facts from which the inference could be drawn that a substantial harm exists, and he must also draw that inference.'") (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)); *cf. Edwards v. Northampton Cnty.*, 663 F. App'x 132, 135 (3d Cir. 2016) (*per curiam*) ("[W]e agree with the District Court and find no reason to apply a different

standard here as we have applied the 'deliberate indifference' standard both in cases involving prisoners and pretrial detainees." (internal citations omitted)).

To establish an Eighth Amendment violation based on the conditions of confinement, a prisoner must establish that prison officials' acts or omissions denied him "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 256 (3d Cir. 2010) (stating that the Eighth Amendment's prohibition of cruel and unusual punishment requires that prison officials provide "humane conditions of confinement."). Such necessities include food, clothing, shelter, medical care and reasonable safety. *Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 418 (3d Cir. 2000). "However, where conditions are not 'cruel and unusual' but merely 'restrictive and even harsh,' they do not violate the Eighth Amendment but rather 'are part of the penalty that criminal offenders pay for their offenses against society.'" *Barndt v. Wenerowicz*, 698 F. App'x 673, 677 (3d Cir. 2017) (*per curiam*) (quoting *Rhodes*, 452 U.S. at 347).

A prisoner must also establish that the defendants acted with deliberate indifference. *Farmer*, 511 U.S. at 835. A claim based on mere negligence is insufficient to allege a plausible Eighth Amendment violation. *See Whitley v. Albers*, 475 U.S. 312, 319 (1986) ("It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock.").

As an initial matter, Coit's Complaint does not make clear where any of the alleged conduct upon which his conditions claims are based occurred. Coit identifies Defendants Marsh, Furguson, Malishaik, and Schnider as employees of the Department of Corrections in Mechanicsburg. (Compl. at 2-3.) He states that Defendants Sorber, Fanrak, Sipple, Hensley, or Glushakohl are

located at SCI Phoenix.  (*Id*. at 4.)  The Court infers that the March 2022 PRC meeting involving Defendants Fanrak, Sipple, Hensley, and Glushakohl; Coit's April 2022 appeal to Defendant Sorber; and Coit's April 2022 meeting with Furguson, Marsh, Malishiak, and Schnider, all took place at SCI Phoenix.  But it t is not clear from the Complaint whether Coit was placed in the BMU while at SCI Phoenix or whether any of the actions underlying his conditions claim occurred there. It appears from the Complaint that Coit was transferred to SCI Frackville sometime between May 16, 2022 and August 2022, and that he was housed in the BMU while at that facility.  (*Id*. at 7, 9.) It further appears from the Complaint that Coit was transferred to SCI Rockview in December 2022, and that he was housed in the BMU at that facility until October 10, 2023, when he was placed in the DTU.  (*Id*. at 9.)

Next, Coit's Complaint is completely devoid of factual allegations describing the occurrences upon which he bases his claims.  Coit does not allege when, where or by whom he was assaulted.  He does not allege who denied him visits or when, where, or why this occurred. He does not identify who retaliated against him or when, where, or why the retaliation occurred, or what form it took.[8]  He does not identify when, where, or why he was subjected to the use of

---

[8] In order to state a plausible First Amendment retaliation claim, a prisoner must allege that:  (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action.  *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003); *Coit v. Garman*, 812 F. App'x 83, 86 (3d Cir. 2020) (*per curiam*).  "An adverse consequence 'need not be great in order to be actionable[;]' rather, it need only be 'more than *de minimis*.'"  *Watson v. Rozum*, 834 F.3d 417, 423 (3d Cir. 2016) (quoting *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006)) (alterations in original).  "[B]eing placed in lockdown, being moved to restricted housing, and being issued misconduct charges are more than '*de minimis*' adverse actions."  *See Palmore v. Hornberger*, 813 F. App'x 68, 70 (3d Cir. 2020) (*per curiam*) (quoting *McKee*, 436 F.3d at 170); *see also Mitchell*, 318 F.3d at 530-31 ("Mitchell's allegation that he was falsely charged with misconduct in retaliation for filing complaints against Officer Wilson implicates conduct protected by the First Amendment.").  The timing of the allegedly retaliatory behavior relative to the constitutionally protected conduct may establish a causal link between the two for purposes of establishing motivation.  *See Watson*, 834 F.3d at 422.

"An adverse consequence 'need not be great in order to be actionable[;]' rather, it need only be 'more than *de minimis*.'"  *Watson*, 834 F.3d at 423 (quoting *McKee*, 436 F.3d at 170 (alterations in original).

excessive force or by whom and does not describe the circumstances surrounding that event.[9]  He does not allege when, where, why or for how long he was placed in disciplinary custody, and does not identify who was responsible for this placement.[10]  Most significantly, he does not allege that the named Defendants were personally involved in any of this conduct.  *See Rode*, 845 F.2d at 1207); *Iqbal*, 556 U.S. at 676.  Accordingly, he has not stated plausible claims and these claims must be dismissed.  However, Coit will be granted leave to amend these claims so he can "flesh out [his] allegations by . . . explaining in an amended complaint the 'who, what, where, when and why' of [his] claim."  *See Gambrell v. S. Brunswick Bd. of Educ.*, No. 18-16359, 2019 WL 5212964, at *4 (D.N.J. Oct. 16, 2019).

---

"[B]eing placed in lockdown, being moved to restricted housing, and being issued misconduct charges are more than '*de minimis*' adverse actions." *See Palmore*, 813 F. App'x at 70 (quoting *McKee*, 436 F.3d at 170); *see also Mitchell*, 318 F.3d at 530-31 ("Mitchell's allegation that he was falsely charged with misconduct in retaliation for filing complaints against Officer Wilson implicates conduct protected by the First Amendment.").  The timing of the allegedly retaliatory behavior relative to the constitutionally protected conduct may establish a causal link between the two for purposes of establishing motivation. *See Watson*, 834 F.3d at 422.

[9]      The Eighth Amendment prohibits prison officials from unnecessarily and wantonly inflicting pain in a manner that offends contemporary standards of decency.  *See Hudson v. McMillian*, 503 U.S. 1, 8 (1992).  When screening an Eighth Amendment excessive force claim under § 1915, the Court asks whether the prisoner has alleged plausibly that the force was applied "maliciously and sadistically to cause harm" rather than "in a good-faith effort to maintain or restore discipline."  *Jackson v. Bueno*, No. 20-0687, 2020 WL 2847925, at *3 (E.D. Pa. June 2, 2020) (quoting *Hudson*, 503 U.S. at 7).  The factors used to determine whether the force applied was excessive include:  (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.  *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (quoting *Whitley v. Albers*, 475 U.S. at 321.)  Although the extent of an inmate's injuries is relevant to an Eighth Amendment analysis, "there is no fixed minimum quantum of injury that a prisoner must prove that he suffered through objective or independent evidence in order to state a claim for wanton and excessive force."  *Id.* at 104.  Thus, the inquiry must be driven by the extent of the force and the circumstances in which it is applied, not by the resulting injuries. *Id.* at 108; *see also Smith v. Mensinger*, 293 F.3d 641, 648 (3d Cir. 2002).  The Eighth Amendment does not protect against a de minimis use of physical force, so long as it is not of a sort "repugnant to the conscience of mankind."  *Brooks*, 204 F.3d at 107 (quoting *Hudson*, 503 U.S. at 9-10).

[10]      *See supra*, Section III. B., for the elements of a claim based on placement in segregated housing.

IV.     **CONCLUSION**

For the reasons set forth, the Court will grant Coit leave to proceed *in forma pauperis*, dismiss his official capacity claims with prejudice, and dismiss the remainder of his Complaint without prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  Coit will be granted leave to file an amended complaint.

An appropriate order follows, which shall be docketed separately.


*NITZA I. QUIÑONES ALEJANDRO, J.*